IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LINDA PARKS, CHAPTER 7 BANKRUPTCY
TRUSTEE FOR THE ESTATE OF LORI L.
SEGRAVES ,

                Plaintiff,


              vs.                           Case No. 16-1096-JTM


WELLS FARGO BANK, N.A.,

                Defendant.



MEMORANDUM AND ORDER


Plaintiff Linda Parks brings this action against Wells Fargo Bank as Chapter 7 trustee for the bankruptcy estate of Lori L. Segraves. Parks alleges that, among other causes of action, Wells Fargo violated the Kansas Consumer Protection Act (KCPA) during its foreclosure of Segraves' residential mortgage. Wells Fargo has moved to dismiss the trustee's claims, and the court finds that the motion should be granted.

The Complaint alleges two violations of the KCPA. Count 1 alleges that Wells Fargo engaged in deceptive actions or practices, and Count 2 alleges Wells Fargo engaged in unconscionable actions in violation of the KCPA. The essence of both claims is that Wells Fargo sent a Notice of Sheriff's sale to the borrower/debtor Segraves, which indicated that

the sale was scheduled for mid-September, 2014. Plaintiff also alleges that, in oral conversations with Wells Fargo employees, Segraves was told that she was required to vacate the residence by the scheduled date of the sale. However, the sale was not actually conducted until 2015, and the trustee argues that Segraves suffered various injuries as a result of the delay.

The complaint fails to set forth an actionable claim under the KCPA for multiple reasons. First, the claim is not a "consumer transaction" within the meaning of the KCPA. The Kansas Act defines such transactions as "dispositions for value" of goods or services. K.S.A. 50-624(c). At the time of the alleged misconduct, Wells Fargo had already obtained a judgment against Segraves on August 13, 2014, and was seeking to enforce its judgment rights by foreclosure. Under Kansas law, once the bank obtained the judgment, the earlier mortgage and debt were extinguished. *See Dumont v. Taylor*, 67 Kan. 727, 729, 74 P. 234 (Kan. 1903) ("[a]fter the merger of the mortgage lien into the judgment the former [is] extinguished"); *Union Cent. Life Ins., v. Irrigation Loan & Trust*, 146 Kan. 550, 73 P.2d 72 (1937) ("[w]hen the note is reduced to judgment it becomes merged in the judgment and cannot thereafter be made the foundation of a subsequent cause of action").

After the judgment, Wells Fargo was seeking to vindicate its interest. Thus, Wells Fargo and Segraves were no longer in a consumer relationship, and Segraves could not and did not "exchange anything of value" to the bank in exchange for its "services." *See Berry v. Nat'l Med. Servs.*, 41 Kan.App.2d 612, 205 P.3d 745 (2009), *aff'd*, 292 Kan. 917, 257 P.3d 287 (2011) (upholding dismissal of KCPA claim where the plaintiff failed to "allege facts one

could characterize as her exchanging anything of value with the defendants to secure their services").[1]

Second, the KCPA does not authorize a separate action by the consumer's trustee. Rather, the statute expressly provides that "consumers" under the Act are "individuals" and "sole proprietors." K.S.A. 50-624(b). "[A] corporation or similar entity that has suffered an injury as a result of a 'deceptive' or 'unconscionable' act or practice cannot assert a claim under the KCPA." *See Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1363 (D. Kan. 1996). The narrow scope of the KCPA means that the individual or sole proprietor who suffered the injury must be the party advancing the claim. *See Finstad v. Washburn v. Univ. of Topeka*, 252 Kan. 465, 472, 845 P. 2d 685 (1993).

The plaintiff trustee responds by arguing that the court should allow the action to proceed, because a contrary ruling "would give [Wells Fargo] a free pass." (Dkt. 10, at 5). However, it is not for the court to rewrite the statute, which explicitly limits the parties entitled to obtain relief. Notably, the Kansas legislature has provided for an exception to the rule which otherwise limits the ability to bring KCPA claims to individuals and sole proprietorships. In K.S.A. 50-632, the legislature explicitly authorized the State attorney

---

[1] In her response, the trustee argues that Wells Fargo engaged in misconduct while "servicing the mortgage" and notes several decisions holding that deceptive practices relating to a mortgage may support a KCPA claim. Leaving aside the fact that the Complaint itself makes no allegation of mortgage servicing, all of the cited cases involve misconduct during the course of an existing or a prospective future mortgage. *See, e.g., Sanchez v. Bank of America*, No. 14-1142-JTM, 2014 WL 5800203 (D. Kan. Nov. 7, 2014). As noted above, the judgment obtained by Wells Fargo extinguished the prior debt and mortgage under Kansas law. At the time of the alleged misconduct, Wells Fargo was not servicing any mortgage. The mortgage had been extinguished and it was enforcing its rights as a judgment creditor.

general to bring claims against deceptive suppliers under the KCPA. This provision indicates both that Wells Fargo has no "free pass," and that the legislature knew how to broaden the persons having standing to bring KCPA claims. The trustee lacks such standing.

In addition to the KCPA claims, the trustee also contends that Wells Fargo's alleged misstatements as to the timing of the sheriff's sale present claims for negligent misrepresentation, common law fraud, and conversion. The court will grant defendant's motion to dismiss these claims as well.

The claims for misrepresentation and fraud claims fail because after the judgment Wells Fargo was in a clearly adversarial relationship with Segraves. Ordinarily, a bank owes no duty of ordinary care for providing sound advice to its borrower. *See Community Nat'l Bank v. Nemo Dev. Inc.*, 2005 WL 3455457, *2 (Kan. Ct. App. Dec. 16, 2005) (citing *Daniels v. Army Nat'l Bank*, 249 Kan. 654, 657, 822 P.2d 39 (1991)). Some underlying duty is a prerequisite for both claims of negligence, *see Hall v. Kansas Farm Bureau*, 274 Kan. 263, 279, 50 P.3d 495 (2002) and fraud. *See OMI Holdings v. Howell*, 260 Kan. 305, 349, 918 P.2d 1274 (1996). The lender-borrower relationship is generally one which is adversarial in nature, and is "not the sort of relationship which justifies imposing a duty" on a lender. *Jack v. City of Wichita*, 23 Kan.App.2d 606, 614, 933 P.2d 787 (1997).

The trustee's reliance in her Response on *Bank of America v. Narula*, 46 Kan.App.2d 142, 261 P.3d 898 (2012) is misplaced. *Narula* was a "complex case" which involved a "long-standing, close relationship" between the bank and the defendant borrowers, which

extended for more than a decade. The Court of Appeals stressed the unusually personal and close nature of the relationship. The bank manager personally "met with the Narulas many times and gave them advice on various personal and business financial matters," and he "handled both the Narulas' business needs and their personal investment funds." 46 Kan.App.2d at 145. Indeed, the bank "repeatedly promoted itself to the Narulas as their 'Trusted Financial Advisor.'" *Id.* at 145-46.

*Narula* represents a departure from the standard rule limiting the scope of duty created by the lender-creditor relationship. The present case, if anything, points in the opposite direction. As set forth above, at the time of the alleged misconduct Wells Fargo and Segraves were no longer even in a lender-creditor relationship. Wells Fargo had obtained a judgment, and was acting in an explicitly adversarial role. The trustee's claims based on a violation of duty are properly dismissed.

Finally, the court will dismiss the trustee's claim that the bank converted Segraves property, since the only facts asserted in support of the claim are that the bank orally communicated to Segraves that the residence had been foreclosed, and orally communicated her need to vacate the property. The Complaint does not allege that the bank physically seized any personal property, or physically dispossessed Segraves.

Conversion "is the unauthorized assumption and exercise of a right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." *Desbien v. Penokee Farmers Union Coop. Ass'n*, 220 Kan. 358, 368, 552 P.2d 917 (1976). Because the tort focuses on actual interference with possession,"[a] mere assertion of ownership of

5

personal property does not constitute a conversion." *Id.* The *Desbien* court cited with approval the treatise observation:

> The gist of conversion is the interference with control of the property. It follows that a mere assertion of ownership, without any disturbance of possession, or any other interference with the right to it, is not sufficiently serious to be classed as conversion. A sale, an advertisement for sale, or a purchase of the chattel by one who has no right to it, while the owner's possession remains undisturbed, does not make the defendant a converter....

*Id.* at 368-69 (quoting William L. Prosser, Law of Torts, 4th Ed., 93). As a result, the court stressed, "a mere threat is insufficient to constitute a conversion and that there must be a disseisin of the property or some actual interference with possession to constitute a conversion." *Id.* at 369, citing *Martin v. Sikes*, 38 Wash. 2d 274, 229 P. 2d 546 (Wash. 1951).

Here, the Complaint fails to allege any acts of physical interference with possession. Rather, the trustee basically alleges that the bank asserted its ownership interest in the property and, consistent with the court judgment it had obtained, told Segraves over the telephone that she should leave the property. The plaintiff has failed to cite any authority recognizing the existence of a conversion based on such oral communications unconnected to any physical dispossession.

IT IS ACCORDINGLY ORDERED this 31st day of January, 2017, that the defendant's Motion to Dismiss (Dkt. 8) is hereby granted.

                                            s/ J. Thomas Marten
                                            J. THOMAS MARTEN, JUDGE